IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CBT FLINT PARTNERS, LLC,

   Plaintiff,

    v.

RETURN PATH, INC., et al.,

   Defendants.

CIVIL ACTION FILE
NO. 1:07-CV-1822-TWT

ORDER

This is a patent infringement action. It is before the Court on the Defendants' Motions for Attorney Fees and Expenses [Docs. 217 and 218] and the Plaintiff's Motion to Review Taxation of Costs [Doc. 237].

I. Background

The Plaintiff CBT Flint Partners, LLC ("CBT") owns United States Patent No. 6,192,114 ("the '114 Patent") and United States Patent No. 6,587,550 ("the '550 Patent"). (Compl. at 4-5.) The patents are directed to a method for filtering unsolicited and unwanted email, or "spam." The patented method requires e-mail senders who are not on an "authorization list" to pay a fee to have their email messages delivered.

On August 1, 2007, CBT sued Return Path, Inc. and Cisco IronPort Systems LLC, alleging that the Defendants' Bonded Sender Program infringed CBT's '114 and '550 patents. The Bonded Sender Program allows a sender of an email to place its IP address on a publicly available list of trusted senders that is used in connection with email filtering. When a sender applies to be in the Bonded Sender Program, a third party determines whether the applicant is a good user of email. If accepted, the sender posts a bond, and its IP addresses are included on the Bonded Sender list. Emails from IP addresses on the Bonded Sender list are not filtered as spam.

The litigation turned on two central issues. First, the parties disputed the construction of certain terms in the '114 patent. On July 10, 2008, the Court entered an order construing the term "authorization list" and the phrase "a list of authorized sending parties associated with the intended receiving party" as "a list of authorized sending parties that have been selected by an intended receiving party." (7/10/08 Order, Doc. 202.) Similarly, the Court construed the phrase "unauthorized sending party" as "a sending party who is not on the authorization list." (7/10/08 Order, Doc. 202.) Based on these constructions, CBT stipulated that the accused products did not infringe the '114 patent. (Final Judgment of Invalidated and Stipulated Final Judgment of Non-Infringement, Doc. 216.)

The parties also disputed whether a typographical error in the '550 patent

affected the validity of the patent. In relevant part, claim 13 of the '550 patent reads: "the computer [is] programmed to detect analyze the electronic mail communication sent by the sending party . . . ." The issue before the Court was whether the intended meaning of "detect analyze" was "subject to reasonable debate." Daniel Santos, who prosecuted the '550 patent and was a partner in CBT and a participant in CBT's pre-filing investigation, testified:

> I'm not sure exactly what I meant, but I think that maybe I meant detect and analyze or I meant detect and meant to delete analyze or I meant analyze and meant to delete detect.

(Defs.' Mot. For Summ. J., Doc. 111, Ex. F, at 157-158.) The Court agreed that the phrase was subject to at least three interpretations and granted summary judgment to the Defendants on the grounds that claim 13 was invalid for indefiniteness. (7/11/08 Order, Doc. 203.) The Defendants now move for attorney fees and expenses under 35 U.S.C. § 285 and 28 U.S.C. § 1927.

## II. Standard for Awarding Attorney Fees

The Patent Act provides that: "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. The determination of whether a case is eligible for an award of attorney fees is a two-step process. Wedgetail Ltd. v. Huddleston Deluxe, Inc., 576 F.3d 1302, 1304 (Fed. Cir. 2009). First, the moving party must show that the case is exceptional by clear and convincing

evidence. Id. Second, if the case is exceptional, the court must determine whether an award of attorney fees is appropriate. Id.

"A case may be deemed exceptional when there has been some material inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Fed. R. Civ. P. 11, or like infractions." Brooks Furniture Mfg., Inc. v. Dutailier Intern., Inc., 393 F.3d 1378, 1381 (Fed. Cir. 2005). "Absent misconduct in conduct of the litigation or in securing the patent, sanctions may be imposed against the patentee only if both (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless." Id. The Federal Circuit has rejected an expansive reading of § 285 which would permit findings of exceptionality except in these limited circumstances. Wedgetail, 576 F.3d at 1305.

The court may also award reasonable attorney fees pursuant to 28 U.S.C. § 1927, which provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "[B]ad faith is the touchstone" for an award of attorney fees under § 1927. Smith v. Grand Bank & Trust of Florida, 193 Fed. Appx.

833, 836 (11th Cir. 2006).

Likewise, the court may award attorney fees pursuant to its inherent power where a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 258-59 (1975). "[T]he only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is ... that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both." Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 336 (2d Cir. 1999).

### III.  Discussion

#### A.  Attorney Fees

The Defendants contend that CBT advanced frivolous and untenable claims that reflected an inadequate pre-filing investigation and engaged in litigation misconduct. Cisco IronPort seeks $1,200,506.06 in attorney fees. Return Path seeks $590,000 in attorney fees and expenses. The Defendants seek an award of attorney fees against CBT and its counsel, the law firm of King & Spalding.

CBT asserts that it engaged in an adequate pre-filing investigation that precludes a finding of subjective bad faith as required to establish exceptionality.

According to CBT, the company retained experienced patent counsel who "reviewed the patents and their file histories, interpreted the claims of both patents as one of ordinary skill in the art would construe them in view of the intrinsic and extrinsic record, evaluated IronPort's website and publicly available advertising materials, compared the patent claims to the Accused Products as described on IronPort's website, performed an element-by-element comparison of the Accused Products to the claims of the CBT patents, and discussed the infringement analysis with CBT's in-house counsel." (Pl.'s Br. In Opp. To IronPort's Motion for Attorney Fees at 7; see also Nichols Decl. ¶¶ 6-9; Santos Decl.)  Although CBT and counsel exercised poor legal judgment in pursuing this action, there is not clear and convincing evidence that the pre-filing investigation was so pathetic as justify an inference of bad faith. See Capital Bridge Co. v. IVL Technologies, No. 04-CV-4002, 2007 WL 3168327 (S.D.N.Y. Oct. 26, 2007) ("[W]hile the Court continues to view as 'absurd' Plaintiff's contention that the . . . Defendants' device[] is functionally equivalent to . . . the '553 patent . . . the Court cannot conclude that Capital Bridge's decision to continue its infringement action following the limited discovery granted by the Court was the result of anything other than poor legal judgment.").

The Defendants also rely upon a series of pre-litigation letters exchanged between Cisco IronPort and CBT.  In July 2002, CBT sent a letter to Cisco IronPort

describing the '114 patent. The letter stated:

> The above-referenced patent (hereinafter "the 114 patent") is directed to a solution to the email spamming problem and requires spammers who <u>are not on an authorization list</u> to pay a fee in order to have their email messages delivered.

(Def.'s Mot. for Attorney Fees, Ex. C, at 1.) (emphasis added). In a May 2004 letter, CBT affirmed its position:

> The patents generally are directed to checking a list to determine whether a sender of an email message is on the list, <u>and if not</u>, delivering the email only if the sending party has previously agreed to pay, or currently agrees to pay, a fee.

(Def.'s Mot. for Attorney Fees, Ex. D.) (emphasis added). Both letters confirm that senders who are not on an authorization list must pay a fee to have their emails delivered to recipients. Based on this information, counsel for Cisco IronPort sent a letter in June 2004 explaining why the Bonded Sender Program, which allows senders who are on an authorization list to have their e-mail delivered without filtering, did not infringe CBT's patents. (Def.'s Mot. for Attorney Fees, Ex. E, at 1-2.) CBT failed to respond to the June 2004 letter. After CBT filed this action, counsel for Cisco IronPort sent a second letter in December 2007 explaining how the Bonded Sender Program could not infringe the '114 Patent. (Def.'s Mot. for Attorney Fees, Ex. F.) The Defendants also note that CBT declined to discuss the case during early proceedings and objected to early summary judgment practice, further displaying

CBT's refusal to cooperate during the litigation. (Def.'s Mot. for Attorney Fees, Ex. G, H.)

The Defendants also contend that CBT engaged in unfounded attacks on Defendants' counsel and made overly broad discovery requests that required the production of 1.4 million electronic documents and 6 versions of source code. CBT made no effort to narrow discovery and engaged in no meaningful discussions regarding the scope of discovery. CBT then filed an emergency motion to compel without engaging in a meaningful effort to resolve a dispute over Cisco IronPort's document production without court intervention. A detailed description of what became a really nasty discovery dispute is available in the Court's August 7, 2008 order. (See 8/7/08 Order, Doc. 206.) Ultimately, the Court ordered CBT and its counsel to pay Cisco IronPort $86,786.95 in attorney fees. Although the Court has already sanctioned this conduct in part, this does not necessarily preclude the consideration of CBT's conduct as part of the totality of the circumstances.

There is a presumption that the assertion of infringement of a duly granted patent is made in good faith. Brooks Furniture Mfg., Inc. v. Dutailier Intern., Inc., 393 F.3d 1378, 1382 (Fed. Cir. 2005). It is true that CBT's counsel displayed a certain stubborn recklessness in dismissing the Defendants' arguments as to "fatal flaws" in CBT's infringement contentions. In their pursuit of a multi-million dollar recovery,

counsel for CBT sought to stretch the claims of the patents way beyond anything in the specification or the prosecution history. However, CBT did prevail on some of its claims construction contentions. And CBT conceded defeat immediately after the Court's claims construction order and entered into a stipulation of non-infringement. In hindsight, it is easy to say that this action should never have been brought. But claims construction of business method patents can be a treacherous undertaking. In the final analysis, the Court is not firmly convinced that counsel for CBT acted in subjective bad faith. Therefore, although CBT's claims may be objectively baseless, there is insufficient evidence of subjective bad faith to establish that this is an exceptional case under the standard set by the Federal Circuit. Without a finding of bad faith, an award of attorney fees under 28 U.S.C. § 1927 or the Court's inherent powers is not appropriate.

    B. <u>Costs</u>

CBT has filed thirty-five pages of briefing objecting to something in every category of Cisco IronPort's bill of costs. In order to accomplish this feat, CBT objects to a $146.82 fee for an unsuccessful attempt to serve a subpoena. The Plaintiff's briefing of this objection consists of 1 full page. The Defendant's response to this objection consists of 2 pages of briefing plus 2 exhibits. What an incredible waste of time! The Plaintiff's objection to taxing the first unsuccessful attempt to

serve Gardner Groff is overruled.

The Plaintiff objects to $243,453.02 in fees for Cisco IronPort's e-discovery vendor, Gallivan Gallivan O'Melia. The Plaintiff says that: "IronPort retained a computer consultant to collect, search, identify and help produce electronic documents from IronPort's network files and hard drives in response to CBT's discovery requests." (CBT's Motion to Review Costs, at 7-8).[1] This appears to be a fair characterization of the services provided by the firm. CBT objects that fees associated with collecting documents for production are not taxable under 28 U.S.C. § 1920. This is a serious objection which deserves careful and deliberate consideration by the Court.

There is a division of opinion as to whether these costs are recoverable under

---

[1] Cisco IronPort describes the services of the e-discovery consultant as follows: "GGO conducted highly specialized technical tasks to acquire, process, preserve, and track the voluminous amount of electronic data that CBT requested in discovery. As further described in GGO's invoices, attached at Exhibit B, these acquisition and processing activities included forensically sound preservation of custodian computers; extraction of documents from multiple operating systems, corporate servers, and network shares while preserving meta-data; cataloging, extracting e-mail and attachments, and processing; compilation of keyword and meta-data indices for analysis and reporting as requested by the plaintiff; auditing and logging of files and ensuring compliance with Federal Rules; decryption and extraction of proprietary data; triage and advanced processing of files with errors; statistical and keyword analysis with related reporting; and compilation of native file production and load files to provide usable documents to plaintiff." (Cisco IronPort's Response, at 4).

28 U.S.C. § 1920.  See Kellogg Brown & Root Intern., Inc. v. Altanmia Commercial Marketing Co. W.L.L., No. H-07-2684, 2009 WL 1457632 (S.D. Tex. May 26, 2009) (collecting cases).  Some courts have allowed these costs as being the modern day equivalent of "exemplification and copies." Id., at *4.  Others have not allowed these costs on the grounds that assembling records for production is ordinarily a task done by attorneys and paralegals and is not a recoverable cost.  Id., at *5.

CBT requested, and Cisco IronPort produced, a massive quantity of data.  In response to the Court's Scheduling Order, the parties agreed that document production would be made in electronic format.  Cisco IronPort has asserted – without contradiction – that production in paper form of the 1.4 million documents plus 6 versions of source code would have cost far more than the fees sought for the e-discovery consultant.  A careful review of the GGO invoices reveals that the services provided are not the type of services that attorneys or paralegals are trained for or are capable of providing.  The services are highly technical.  They are the 21st Century equivalent of making copies.  See Cargill Inc. v. Progressive Dairy Solutions, Inc., No. CV-F-07-0349, 2008 WL 5135826, at *6 (E.D. Cal. 2008) ("Progressive provides an explanation of the invoice-case management was done electronically because of the volume of documents; scanning of documents was necessary to provide an adequate defense to the several motions and trial presentation. Accordingly, this cost[] is

recoverable."). The services are certainly necessary in the electronic age. The enormous burden and expense of electronic discovery are well known. Taxation of these costs will encourage litigants to exercise restraint in burdening the opposing party with the huge cost of unlimited demands for electronic discovery. The objection to taxation as costs of the e-discovery consultant's fees is overruled and denied. Cisco IronPort has revised its bill of costs in response to many of the Plaintiff's other objections. The remaining objections are overruled and denied for the reasons given by Cisco IronPort in its response to the motion.

## IV.  Conclusion

For the reasons set forth above, the Defendants' Motions for Attorney Fees and Expenses [Docs. 217 and 218] are DENIED. The Plaintiff's Motion to Review Taxation of Costs [Doc. 237] is GRANTED in part and DENIED in part. The Clerk is directed to tax costs against the Plaintiff and in favor of the Defendant Cisco IronPort in the revised amount of $268,311.12.

SO ORDERED, this 30 day of December, 2009.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge